IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| GLENDA G. HEUPEL, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. CV-00-B-1463-NW |
| TRANS UNION LLC, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

ENTERED FEB - 7 2002

Currently before the court is the motion for summary judgment filed by Defendant Trans Union LLC ("Trans Union"). Plaintiff Glenda G. Heupel ("plaintiff" or "Heupel") commenced this action by filing a complaint on April 26, 2000, in the Circuit Court of Lauderdale County, Alabama, alleging claims under the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq*. ("the FCRA") and a state law defamation claim. (*See* Compl.) Defendants timely removed the matter to this court on May 31, 2000.[1] Upon consideration of the record, the submissions of parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

Plaintiff claims that Trans Union negligently and/or willfully failed to follow reasonable procedures to assure maximum possible accuracy in violation of FCRA §1681e(b) (Counts I and VII); that it failed to reinvestigate plaintiff's disputes in violation of §1681i (Count II); and that

---

[1] The court granted plaintiff's motion to amend complaint on August 14, 2000, which allowed plaintiff to clarify the name of Wells Fargo/Fidelity Acceptance. Plaintiff has since settled and dismissed her claims against defendants Wells Fargo, Sears Roebuck and Capital One Services.



it defamed her by its false reports. (Counts III and VII).[2]

## I. FACTUAL SUMMARY

In October 1999, plaintiff applied for a Discover credit card. (*See* PX B.)[3] By letter dated October 22, 1999, Discover notified plaintiff that it was unable to approve her application for credit because her she failed to attain the minimum number of points necessary for approval of her application.[4] (*Id.*) Discover further explained that "[t]he principal factor[] which contributed to your application not attaining the minimum number of points [for approval is] . . . BANKRUPTCY." (*Id.*) Discover informed plaintiff that in reaching its decision, it relied on information from Trans Union, (*id.*), a consumer reporting agency under FCRA §1681a(f) that maintains a database of information on consumers throughout the United States, (Terry Aff. ¶ 2).[5]

On October 28, 1999, Heupel requested a copy of her file through Trans Union's automated disclosure system. (Terry Aff. ¶ 7.) Trans Union mailed plaintiff a copy of her report

---

[2] Counts IV, V, and VI assert no claims against Trans Union.

[3] The evidence attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment will be referenced as "PX" followed by the corresponding exhibit letter. Plaintiff also applied for credit with other companies which denied her application because of debts on her credit report. (*See* PX J ¶¶ 2-3.)

[4] Discover told plaintiff that it "processed [plaintiff's] application using a credit scoring system. This system analyzes certain factors taken from information on [plaintiff's] application, a credit bureau report, and/or other credit history." (PX B.)

[5] Diane Terry is Director of Trans Union's Fraud Victim Assistance Department and supervises Trans Union's consumer relations activities for the western United States. Her responsibilities include insuring that Trans Union complies with FCRA § 1681i for the reinvestigation of disputes. Her affidavit will be referenced as "Terry Aff." Exhibits attached to the affidavit will be referenced as "DX" followed by the corresponding exhibit letter.

on November 2, 1999. (*Id.*; *see* PX A.) The following table summarizes the accounts that "contain information which some creditors may consider to be adverse":

| Account | Adverse information |
|---|---|
| Dial Bank (Joint Acct) # 1783219 | –Ch 13 Wage Earner Plan Acct<br>–Charged off as bad debt |
| Capital 1 Bk (Individual Acct) # 4121741445609949 | –Charged off as bad debt |
| Fdlty Accpt (Joint Acct) # 1706029533088264 | –Profit and loss writeoff<br>–Charged off as bad debt |
| Fdlty Accpt (Joint Acct) # 306029533088264 | –Status as of 12/1997 120 days past due<br>–In prior 31 months from last update 2 times 120 days, 1 time 90 days, 4 times 60 days, 8 times 30 days late<br>–Maximum delinquency of 120+ days occurred in 11/1997 |
| Sears # 581155565822 (suppressed pending credit grantor update) | –Status as of 11/1997: 30 days past due<br>–In prior 48 months from last update 5 times 30 days late |
| Secor Bank # 7001712 | –Status as of 08/1993: 30 days past due<br>–In prior 8 momths from date paid 1 time 30 days late |
| NBGL-Parisia # 392262436 | –In prior 48 months from last update 1 time 30 days late |

(*See* PX A.)

It is undisputed that although plaintiff has not filed for bankruptcy, she is a "joint obligor" on the Dial Bank account, and that her ex-husband, the other joint obligor, filed for Chapter 13 Bankruptcy after their divorce. (Compl. ¶ 49; DX A, Ex. F attached thereto.) The Dial Bank Account is covered under plaintiff's ex-husband's Chapter 13 Bankruptcy. It is also undisputed that plaintiff was an obligor on only one Fidelity Acceptance account, rather than

3

two.[6] (PX F ¶ 1; PX J ¶ 9.) Finally, it is undisputed that although adverse information concerning the Sears account appeared on plaintiff's file disclosure, it did not appear on consumer reports to third parties. (Terry Aff. ¶ 13; *see* PX A.)

By letter dated December 28, 1999, plaintiff's counsel informed Trans Union that plaintiff disputed the accuracy of several entries in the November 2, 1999, report. (DX A, Ex. D attached thereto.) In particular, plaintiff disputed the accuracy of "Capital One Bank # 4121741445609949, Fidelity Acceptance #'s 1706029533088264 and 306029533088264, and Sears # 581155565822." (*See id.*) The letter contains no mention of the Dial Bank account designated as a Chapter 13 Wage Earner Plan Account. (*See id.*)

Upon receipt of the letter, Trans Union opened a reinvestigation in accordance with FCRA § 1681i. (Terry Aff. ¶ 9.) As a result of the reinvestigation, Trans Union deleted the Fidelity Acceptance accounts and the Sears account, and permanently removed the Capital One account from its system. (*Id.*) On February 8, 2000, Trans Union sent plaintiff an updated report confirming that it had deleted each item disputed in plaintiff's December 28, 1999, letter.[7] (*See* DX B, Ex. 8 attached thereto.) Approximately two months later, plaintiff filed this action.

---

[6] According to Wells Fargo, successor in interest to Fidelity, "[a]ccounts # 306029533088264 and # 1706029533088264 are the same account . . . [which] was an unsecured account that was opened by Alan and Glenda Heupel on June 2, 1995." (PX F.)

[7] Although Trans Union completed the investigation and removed all disputed accounts from plaintiff's file by January 31, 2000, it could not send a corrected disclosure to plaintiff until February 7, 2000, when it received proof of plaintiff's address as required by FCRA § 1681h(a)(1). (Terry Aff. ¶¶ 10-11.)

4

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. DISCUSSION

### A. FCRA Claims

The purpose of the FCRA is to ensure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . and other information in a manner which is fair and equitable to the consumer, with regard to the

5

confidentiality, accuracy, relevancy, and proper utilization of such information . . . . 15 U.S.C. § 1681(b). Sections 1681n and 1681o provide private rights of action for willful and negligent noncompliance with any duty imposed by the FCRA and allow recovery for actual damages and attorneys' fees and costs, as well as punitive damages in the case of willful noncompliance.

### 1. FCRA §1681e(b): Reasonable Procedures

The FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To sustain her FCRA §1681e(b) claim, plaintiff must prove the well established elements set forth in *Bryant v. TRW, Inc.*, 487 F. Supp. 1234, 1238 (E.D. Mich. 1980), *aff'd*, 689 F.2d 72 (6th Cir.1982) and *Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F. Supp. 962, 967 (S.D. Ohio 1983). In order to recover, plaintiff must show:

> 1. Defendant was negligent in that it failed to follow reasonable procedures to assure maximum possible accuracy of information about the plaintiff;
> 2. Defendant reported inaccurate information about the plaintiff;
> 3. Plaintiff was injured; and
> 4. Defendant's negligence was the proximate cause of such injury.

*Morris*, 563 F. Supp. at 967, citing *Bryant*, 487 F. Supp. at 1238.

"In order to make out a prima facie violation of section [1681e(b)] . . . a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information." *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991). The FCRA does not make reporting agencies strictly liable for all inaccuracies. *See id.* Even if it generated an inaccurate report, an agency may escape liability by showing that it followed reasonable procedures, "which will be a jury question in the overwhelming majority

6

of cases." *Id.*

### a. Reporting Inaccurate Information

To make out a prima facie violation of section 1681e(b) plaintiff must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information. *See Cahlin*, 936 F.2d at 1156. Because there is no evidence that Trans Union reported the Sears account to a third party, (Terry Aff. ¶ 13; *see* PX A), it provides no basis for a prima facie case. On the other hand, Trans Union's reporting of the Capital One account on plaintiff's credit report might be actionable, because there is evidence that the account was not plaintiff's, (*see* PX J ¶ 8).

Trans Union argues that its reporting of two Fidelity accounts was "accurate." (Def's Brief at 6.) This argument is without merit. It is undisputed that plaintiff was an obligor on only one Fidelity account, rather than two. (PX F ¶ 1; PX J ¶ 9.) Because there is evidence that Trans Union reported two Fidelity accounts with different account numbers, different balances, and different reports of adverse information, (PX A), Trans Union's reporting of two Fidelity accounts constitutes a prima facie case of inaccurate reporting.

Trans Union argues that its reporting of the Dial Bank account is accurate, and thus cannot form the basis of a prima facie case. (Def.'s Brief at 5-6.) Trans Union reported that the account was subject to a Chapter 13 Wager Earner Plan. (PX A.) Although plaintiff has not filed for bankruptcy, her ex-husband, a joint obligor on the account, filed for Chapter 13 bankruptcy after their divorce. (Compl. ¶ 49.)

Plaintiff contends that although defendant's report that the Dial account was subject to Chapter 13 bankruptcy is technically accurate, it is actionable because it is misleading or

materially incomplete because it suggests that plaintiff filed for bankruptcy. (Pl.'s Resp. at 4.) Plaintiff's position is not without support. *See Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40-42 (D.C. Cir. 1984). Under this view, a credit reporting agency cannot prevail on summary judgment if it reports factually correct information that could be interpreted as misleading or incomplete. *See id.* In support of its position, the District of Columbia Circuit relied on Congressional intent as gleaned from the text of the FCRA. "Congress did not limit the Act's mandate to reasonable procedures to assure only technical accuracy; to the contrary, the Act requires reasonable procedures to assure 'maximum accuracy.'" *Id.* at 40; *see* 15 U.S.C. § 1681e(b) (requiring reporting agencies to "follow reasonable procedures to assure maximum possible accuracy . . ."). The court concluded that granting summary judgment in favor of a reporting agency who issued a report containing factually correct but misleading information would be inconsistent with the Act's express purpose of requiring that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy and proper utilization of such information . . . ." *Id.* (citing 15 U.S.C. § 1681(b)).

However, other courts have concluded that the FCRA merely requires credit reporting agencies to report information that is "technically accurate." *See e.g., Todd v. Associated Credit Bureau Servs., Inc.*, 451 F. Supp. 447, 448 (E.D. Pa. 1977), *aff'd*, 578 F.2d 1376 (3rd Cir. 1978). There is support for this position. Contrary to the suggestion of the *Koropoulos* court, the stated purpose of the Act is not to require reporting that is "fair and equitable to the consumer" as the consumer or the court may see it, but "fair and equitable . . . in accordance with the requirements

of [the Act]." 15 U.S.C. § 1681(b). The Act requires reporting agencies to adopt procedures that assure "maximum accuracy" of information in consumer credit reports. Requiring that each report be void of material omission would place too great a burden on credit reporting agencies and could subject them to liability for omitting information of which they did not and had no reason to know. Requiring "technical accuracy" in credit reports best captures the balance Congress struck between consumers' concern for fair and equitable treatment and reporting agencies' goal of maintaining accurate and cost-effective credit reporting.

The Eleventh Circuit has identified the two approaches exemplified in *Koropoulos* and *Todd*, but has not decided which approach to take. *See Cahlin*, 936 F.2d at 1157. In light of the reasoning underlying the *Todd* approach, this court concludes that a credit reporting agency should be entitled to summary judgment if it reports factually correct information.[8] Therefore, Trans Union's report of the Dial Bank account as a Chapter 13 Wage Earner Account is accurate within the meaning of section 1681e(b) and can provide plaintiff no basis of relief.

### b. Causation

Plaintiff must prove that defendant's negligence proximately caused her injury. *See Morris*, 563 F. Supp. at 967. In the Eleventh Circuit, plaintiff must establish that "inaccurate information on that report was the cause of [plaintiff's] denial of credit." *Cahlin*, 936 F.2d at 1161. It is undisputed that Discover denied plaintiff's application for credit because of a Trans

---

[8] Because the question of whether a reporting agency followed reasonable procedures is a jury question "in the overwhelming majority of cases," *see Cahlin*, 936 F.2d at 1156, the *Koropoulos* approach would allow plaintiffs to avoid summary judgment by merely identifying information that is pertinent to the decision to grant or deny credit, of which the reporting agency neither knew nor had reason to know. Therefore, the *Todd* approach is fairer to reporting agencies and a better conservator of judicial resources.

9

Union credit report. (*See* PX B.) Plaintiff has provided sufficient evidence to create an issue of fact as to the accuracy of Trans Union's reporting as to the Capital One and Fidelity Acceptance accounts. Though there is evidence that Discover denied plaintiff's application because of Trans Union's reporting of the Dial Bank account, which was accurate, (*see* PX B), there is no evidence that Trans Union's reporting of the Capital One and Fidelity Acceptance accounts had any bearing on Discover's decision. Therefore, plaintiff has offered no evidence by which a reasonable juror could conclude that defendant's report of inaccurate information caused the denial of credit to plaintiff. Therefore, plaintiff's section 1681e(b) claim is due to be dismissed.

### 2. FCRA §1681i: Reinvestigation of Plaintiff's Dispute

FCRA §1681i requires Trans Union to reinvestigate information in its files disputed by consumers.[9] Plaintiff alleges that Trans Union failed to reinvestigate in response to her letter dated December 28, 1999, disputing the accuracy of Trans Union's reporting as required by FCRA §1681i. (Compl. ¶ 22.) At oral argument, counsel for plaintiff conceded that all of the information disputed in that letter was reinvestigated and timely removed from plaintiff's file and that plaintiff was notified of the deletions.[10] The FCRA §1681i claim was withdrawn by

---

[9] FCRA §1681i(a)(1)(A) provides:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

[10] Plaintiff also acknowledged "that the defendant has corrected Ms. Heupel's credit report at her attorney's request." (Pl.'s Opp. at 7.)

counsel at oral argument and is therefore due to be dismissed.

### 3. FCRA §1681n: Wilful Violation/Punitive Damages Claim

The FCRA allows the recovery of punitive damages only when non-compliance with an FCRA requirement was "willful". *See* 15 U.S.C. §1681n. Courts have consistently disallowed punitive damages absent special and aggravating circumstances. In *Cousin v. Trans Union Corp.*, a Fifth Circuit panel vacated a jury's punitive damages verdict, stating:

> "Malice or evil motive need not be established for a punitive damages award, but the violation must have been willful." *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir. 1983). In *Pinner*, we noted that "willful" is a word of many meanings and that its construction is often influenced by its context. *See Pinner*, 805 F.2d at 1263. In concluding that the consumer reporting agency in that case did not commit a willful violation, we remarked that there was no evidence suggesting that the agency "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Id.*; *see also Philbin*, 101 F.3d at 970; *Stevenson*, 987 F.2d at 293. Generally, courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments. *See Pinner*, 805 F.2d at 1263. In those cases, a consumer reporting agency has typically misrepresented or concealed some or all of a credit report from a consumer. *See id.* (discussing *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829 (8th Cir.1976)); *see also Stevenson*, 987 F.2d at 294.

246 F.3d 359, 372 (5th Cir. 2001).

In this case there is no evidence that Trans Union knowingly or intentionally committed any act in conscious disregard for the rights of plaintiff or made any willful misrepresentation or concealment. Thus, Trans Union is entitled to summary judgment on plaintiff's punitive damages claims. *See* 15 U.S.C. § 1681n.

### B. State Law Defamation Claim

"Section 1681h(e) is recognized as providing qualified immunity for consumer reporting agencies with an exception from such qualified immunity being made for actions pursuant to sections 1681n and 1681o . . . . Such an exception was not meant to lessen the standard necessary to overcome this qualified immunity in defamation actions." *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir.1980), *cert. denied*, 449 U.S. 835 (1980); *see Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1069 (9th Cir. 1992). Trans Union asserts that Plaintiff's defamation claim is barred by the qualified immunity of FCRA §1681h(e).[11] Plaintiff "agrees that if [Trans Union] had not acted willfully then [Trans Union] could establish the Defense of Qualified Immunity." (Pl.'s Opp. at 13.) Here, Trans Union is entitled to judgment as a matter of law on plaintiff's defamation claim because there is no evidence that Trans Union maliciously or willfully furnished false information with the intent to injure plaintiff. *See* 15 U.S.C. § 1681h(e).

---

[11] FCRA §1681h(e) provides as follows:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer.

## CONCLUSION

Based on the foregoing, the court is of the opinion that Defendant Trans Union's Motion for Summary Judgment is due to be granted as to all of plaintiff's claims. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 7th day of February, 2002.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge